UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MARION FISHER, ET AL.                    *              CIVIL ACTION
                                         *
VERSUS                                   *              NO. 09-7038
                                         *
UNITED STATES OF AMERICA                 *              SECTION "L"(2)


ORDER AND REASONS

The Court has pending before it two motions filed by the United States: a motion to

exclude expert testimony (Rec. Doc. 23) and a motion for summary judgment (Rec. Doc. 24).

The Court has reviewed the briefs and the applicable law and now enters this Order and Reasons.

I.      BACKGROUND

This case arises out of the death of Leonard Porche while he underwent treatment at the

Department of Veterans Affairs Medical Center in New Orleans.  Mr. Porche underwent a triple

bypass on June 7, 2004 at the hospital.  Subsequently during his stay at the hospital, Mr. Porche

had a percutaneous endoscopic gastronomy (PEG) tube installed to permit feeding.  The

Plaintiffs, Mr. Porche's three surviving siblings, allege that the tube leaked into Mr. Porche's

abdominal cavity, which caused sepsis.  Plaintiffs allege that Mr. Porche underwent exploratory

surgery to repair a bowel opening, which was followed by respiratory distress worsened by the

sepsis.  Plaintiffs allege that Mr. Porche died due to the sepsis which was caused by the

negligence of the United States and its employees.  Plaintiffs filed suit seeking wrongful death

damages for Mr. Porche's pain and suffering, loss of consortium, mental anguish, and death, as well as unspecified survival action damages.  The United States denies liability.

Plaintiffs have obtained an expert opinion from Dr. Andrew Manganaro regarding the cause of Mr. Porche's death.  In a two-page report signed August 28, 2010, Dr. Manganaro recites Mr. Porche's course of treatment and symptoms and then reaches two opinions.  First, he opines "that the cause of the patient's death was multiple organ system failure secondary to sepsis secondary to peritonitis secondary to peritoneal contamination from gastric contents leaking around the dislodged site of the gastrostomy (PEG) tube."  Second, he opines that "this leak occurred because the tube was placed through the mesocolon which prevented adequate approximation of the gastric wall to the abdominal wall and that this constitutes a violation of the standard of care for this procedure."

The parties experienced some difficulty in scheduling Dr. Manganaro's deposition.  The United States filed a motion to exclude Dr. Manganaro's testimony entirely on that basis, but the parties sought and received an extension of discovery deadlines to take the deposition.[1]  Dr. Manganaro was deposed on December 2, 2010.  At the deposition, Dr. Manganaro expanded on the opinion contained in his report by opining that "the breach of the standard of care is a compound issue between the placement of the tube and the failure to diagnose the leak which occurred subsequently."  The following exchange between counsel for the United States and Dr. Manganaro, in which Dr. Manganaro comments on an opposing expert and elaborates on his own opinions, is the basis of the present motions:

_____

[1]At the United States's insistence, the Court did not extend the deadlines for expert opinion disclosure.

Q.     I would assume, based on your report, that you would disagree with the opinion Dr. Staudinger's expressing in this report.

A.     Not entirely.

Q.     Tell me of what Dr. Staudinger's opinion you would agree with or at least not take exception with?

A.     Well, I agree that it can be placed through the mesocolon where the structures are anterior to the stomach at the time of placement, and I agree that in most cases this does not result in ill effects and the tube can be used.  However, what is most pertinent here is that in this case it did result in a catastrophic ill effect, and most importantly the operating surgeon who performed the PEG tube failed to recognize in a timely fashion that the leak had occurred until the patient was well into extremis.

Q.     As to that latter opinion, that postoperatively, and what I mean by that is post placement of the PEG tube is what I should say, there was a delay or a failure to timely diagnose, I was not able to glean that opinion from your written report.  And based on what Dr. Staudinger provided to me, it does not appear that he was able to either.  Is there something I'm perhaps missing, or where in the actual text of the report can I find that opinion.

A.     It's not in the text of the report.  But subsequently, as I reviewed the chart, it became clear to me, and I should have put that in the report.

Q.     When you talk about subsequent review, would that be after you drafted it in August of 2010?

A.     I suppose, yes.

Q.     When would that subsequent record review have taken place?

A.     Oh, just as I was mulling over the course of the patient's care and the like.

After the December 2, 2010 deposition, the Plaintiffs have not attempted to supplement Dr. Manganaro's report.

## II.     **PRESENT MOTIONS**

The United States has filed two related motions.  First, the United States has filed a Motion to Exclude Expert Opinion.  The United States argues that Plaintiffs' expert witness Dr.

Andrew Manganaro offered an opinion at his deposition that was not disclosed in his Rule 26 expert report.  Accordingly, it argues that Dr. Manganaro should be prohibited from offering that testimony at trial.  Plaintiffs respond that Dr. Manganaro merely elaborated on the opinions contained in his initial report and that limiting his testimony is an unduly harsh sanction.

Second, the United States has filed a motion for summary judgment.  The United States contends that if Dr. Manganaro's expert testimony is restricted to the opinions stated in his report, Plaintiffs have no evidence that any employee of the United States breached the standard of care in treating Mr. Porche.  Therefore, the United States contends that summary judgment is appropriate.  Plaintiffs respond that Dr. Manganaro's testimony raises a genuine dispute of fact regarding whether Mr. Porche's treatment violated the standard of care and that summary judgment should not be granted.

## III.   LAW AND ANALYSIS

## A.   Motion to Exclude

The Federal Rules of Civil Procedure require disclosure of written expert reports containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).[2]  Once disclosed, the party has an ongoing duty to supplement the contents of an expert report.  Fed. R. Civ. P. 26(a)(2)(D), (e)(2).  Pursuant to the Court's scheduling order, Dr. Manganaro's report, "fully setting forth all matters about which [he] will testify," was to be disclosed by August 30, 2010.  (Rec. Doc. 7 at

---

[2]Plaintiffs produced Dr. Manganaro's report before the amendments to the Federal Rules of Civil Procedure went into effect on December 1, 2010, but he was deposed after the amendments.  The amendments do not affect the present motions and accordingly the Court will apply the amended Rules.

2).  Supplements to that report were due no later than the filing of witness and exhibit lists.  *See*

Fed. R. Civ. P. 26(a)(3), (e)(2).  The Court required filing witness and exhibit lists by September

30, 2010.  (Rec. Doc. 7 at 2).

The Plaintiffs timely produced a satisfactory written report from Dr. Manganaro.  That

report opined that Mr. Porche died because of a leak that "occurred because the tube was placed

through the mesocolon which prevented adequate approximation of the gastric wall to the

abdominal wall."  Thus, according to the report, placement of the PEG tube violated the standard

of care.  At his December 2, 2010 deposition, Dr. Manganaro offered an expanded account of the

standard of care.  He opined that opinions that the breach of the standard of care was "a

compound issue between the placement of the tube and the failure to diagnose the leak which

occurred subsequently."

Perhaps, as Plaintiffs contend, Dr. Manganaro's opinion at his deposition that the

standard of care was breached both by placement of the tube and subsequent failure to diagnose

could be construed as a "logical outgrowth" of his initial opinion placing the blame only on

placement of the tube.  But in Dr. Manganaro's own words, his subsequent opinion about breach

of the standard of care by failure to diagnose was "not in the text of the report" and that he

"should have put that in the report."  Thus, the Court finds that Dr. Manganaro did go beyond the

scope of his report and offer a new opinion at his deposition.  The Plaintiffs did not supplement

Dr. Manganaro's report prior to the deposition with that new opinion and they have not sought

leave to do so since the deposition.  Accordingly, the new opinion that Dr. Manganaro offered at

his deposition was not timely disclosed to the United States in compliance with Rule 26 or the

Court's scheduling order.

"If a party fails to provide information or identify a witness as required by Rule 26 (a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Alternative sanctions such as shifting attorney's fees and costs are available.  *See id.* When considering whether to exclude or limit undisclosed expert testimony pursuant to Rule 37 or a scheduling order, the Court considers four factors: "(1) the explanation for the failure to identify the [testimony]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."  *Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004).

Considering the first factor, Plaintiffs take the position that the subsequent opinions were simply logical outgrowths of the original report, but in light of Dr. Manganaro's own statement that his original report did not contain the new opinions, that argument is not tenable. Alternatively, Plaintiffs argue that they had no knowledge that Dr. Manganaro had formed new opinions or would announce them at his deposition.  Nothing in the record refutes this contention.  There does not appear to be any attempt on the part of Plaintiffs to surprise the United States or obtain a strategic advantage by concealing Dr. Manganaro's testimony.  While Plaintiffs do not have a satisfactory explanation for why Dr. Manganaro formed additional opinions after issuing his report but failed to notify the attorneys who retained him, this factor does not weigh in favor of excluding Dr. Manganaro's testimony.

Considering the second factor, Dr. Manganaro's opinions regarding breach of the standard of care go to the heart of the United States's potential liability.  The Fifth Circuit has occasionally interpreted the importance factor to mean that the more important the testimony, the

more care a party should have taken to comply with the disclosure requirements.  *See Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) ("Moreover, the claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines or at least informed the trial judge in advance if good faith compliance was not possible."); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).  More recently, the Fifth Circuit has characterized *Geiserman* and *Barrett* as "standing [the second factor] on its head."  *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707-08 (5th Cir. 2007).  In *Betzel*, the court applied that factor "as intended" and held that the extreme significance of the expert testimony weighed in favor of the party offering it and against exclusion.  *Id.* at 708.  00Nonetheless, "the importance of such proposed testimony cannot *singularly* override the enforcement of local rules and scheduling orders." *Id.* (quotation omitted) (emphasis in original).  Following the Fifth Circuit's most recent guidance, this factor weighs against exclusion as a sanction because Dr. Manganaro's testimony is central to Plaintiffs' case.

Considering the third factor, the United States contends that it has been prejudiced because without a report disclosing all of Dr. Manganaro's opinions, it was unable to prepare detailed cross-examination questions for his deposition.  The United States additionally urges that it has been deprived of the opportunity to obtain its own expert testimony to rebut Dr. Manganaro's new opinions.  These are valid concerns and weigh in favor of some sanction for Plaintiffs' noncompliance.  *See, e.g.*, *Geiserman*, 893 F.2d at 791.  However, the prejudice to the United States does not necessarily warrant the extreme sanction of excluding Dr. Manganaro's undisclosed opinion.

Considering the fourth factor, a continuance will cure much of the prejudice.  Any

7

disadvantage from the new opinion can be averted by continuing the trial and reopening

discovery for the limited purpose of allowing the United States to adequately investigate and

rebut those opinions. *See Betzel*, 480 F.3d at 708-09. Indeed, a continuance is "the preferred

means of dealing with" non-disclosure. *See id.* at 708.

Taking all of these factors into account, the Court will not limit Dr. Manganaro's

testimony or exclude the opinions he announced at his deposition as a sanction for non-

disclosure. Rather, the Court will entertain a motion by the United States to continue the trial

and to reopen discovery for the limited purpose of allowing the United States to investigate and

respond to Dr. Manganaro's opinions. This continuance and opportunity for full discovery will

cure any prejudice to the United States caused by the Plaintiffs' non-disclosure. Plaintiffs will

not be permitted to use this as another bite at the apple to shore up Dr. Manganaro's opinions;

the additional discovery (and Dr. Manganaro's testimony) will be limited to the scope of his

report and deposition testimony. If the fees and costs associated with this continuance and

additional discovery are excessive, a motion to shift those expenses from the United States to the

Plaintiffs may be appropriate. If it arises, the Court will address that issue in due course.

**B.     Motion for Summary Judgment**

The United States's motion for summary judgment is easily resolved. Summary

judgment is only appropriate if "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The United States's

motion is premised on exclusion of the new opinion Dr. Manganaro expressed at his deposition.

Without the benefit of that testimony, the United States contends that Dr. Manganaro agrees with

its own expert witness. Dr. Staudinger opined for the United States that placement of a PEG

tube through the mesocolon "is not in and of itself a breach in the standard of care."  Dr. Manganaro agrees with Dr. Staudinger, at least to some extent, that a PEG tube "can be placed through the mesocolon where the structures are anterior to the stomach at the time of placement, and . . . that in most cases this does not result in ill effects and the tube can be used."  The United States argues that this agreement means there is no factual dispute as to whether the standard of care was breached and summary judgment should be granted in its favor.

The Court has denied the United States's motion to limit Dr. Manganaro's opinions.  Dr. Manganaro will be permitted to testify at trial that the standard of care was breached through "a compound issue between the placement of the tube and the failure to diagnose the leak which occurred subsequently."  The United States acknowledges that its motion for summary judgment depends on its motion to exclude Dr. Manganaro's new opinions.  (Rec. Doc. 34 at 1).  Accordingly, it appears at this stage in the case that there is a genuine dispute as to whether Mr. Porche's course of treatment breached the standard of care and summary judgment is inappropriate.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that the United States's Motion to Exclude (Rec. Doc. 23) is DENIED.  Additionally, the United States' prior motion to exclude Dr. Manganaro based on an inability to depose him (Rec. Doc. 15) is DENIED as moot.

The Court will entertain a motion to continue the trial and to reopen discovery for the limited purpose of allowing the United States to depose Dr. Manganaro again, to supplement the report of its own expert, or to obtain a new expert to rebut Dr. Manganaro's new opinion.

IT IS FURTHER ORDERED that the United States's Motion for Summary Judgment

(Rec. Doc. 24) is DENIED with leave to re-file upon completion of additional discovery.

New Orleans, Louisiana, this 24th day of January, 2011.

_____
UNITED STATES DISTRICT JUDGE